UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Emma J. Abney,<br><br>                Plaintiff,<br><br>vs.<br><br>CitiFinancial Auto,<br><br>                Defendant. | Case No. 3:09-cv-02877-JFA<br><br>AMENDED COMPLAINT |

Plaintiff, complaining of the Defendant above-named, would show this Court as follows:

**JURISDICTION**

1. The State of Residence of Plaintiff is the State of South Carolina.

2. Upon information and belief, Defendant CitiFinancial Auto is a corporation headquartered in a State other than South Carolina, which transacts substantial business in the State of South Carolina.

3. This action was originally filed in state court by the Plaintiff and was removed to District Court, Columbia Division by Defendant.

4. This Court has jurisdiction over the parties and subject matter of this action.

**FACTUAL ALLEGATIONS**

5. In or around 2005, Plaintiff purchased a 2003 Ford Explorer from Wray Automotive in Columbia, South Carolina. The purchase of vehicle was financed by Defendant.

6. At the time of the purchase of the vehicle, Plaintiff additionally purchased a policy of GAP insurance through Protective Insurance.

7. Plaintiff thereafter performed under her contract with Defendant.

8. On or about January 16, 2009 Plaintiff's vehicle was struck by another driver (the "at-fault" driver). The at-fault driver was insured by Traveler's Insurance, which accepted liability and tendered payment based on the value of Plaintiff's vehicle as a total loss. The amount offered and ultimately paid by the at-fault driver's insurer was approximately $8,990.00, leaving a balance due to the Defendant of approximately $3047.72.

9. Immediately following the accident, Plaintiff contacted Defendant and advised of the situation; Defendant reminded Plaintiff that she had GAP coverage, which existed to cover any shortfall between the amount due and owing and the amount paid by other insurance coverage.

10. Defendant expressly advised Plaintiff that it would file the GAP claim, expressly stated that there was "nothing" that Plaintiff needed to do, and expressly advised Plaintiff not to make any payment to Defendant.

11. On or about January 29, 2009 the at-fault driver's insurance paid CitiFinancial approximately $8,990.00 for the total loss of the vehicle.

12. Thereafter, Plaintiff continued to contact Defendant to ensure that it had everything it needed from her. On or about March 17, 2009, Plaintiff received a letter from Defendant requesting a police report and a description of the accident, which Plaintiff supplied immediately.

13. Plaintiff resumed calling Defendant's 800 number after several more weeks passed with no word from Defendant.  Often, Plaintiff would be placed on hold for long periods of time, or routed from department to department.  On many occasions, Defendants number rang with no answer.

14. In or around May of 2009, Defendant contacted Plaintiff's place of employment and left a message with one of Plaintiff's co-workers that it was "urgent" that Plaintiff get in touch with Defendant that day.

15. Shortly thereafter, Plaintiff received a message on her cell-phone from an individual stated that Plaintiff must immediately call Defendant's legal department, and that Defendant intended to report Plaintiff to the Sheriff's department because she had a "stolen vehicle" in her possession.  Defendant's employee expressly represented that Plaintiff would be arrested.

16. Plaintiff attempted to call Defendant's legal department, but no one in that department was of any assistance.  Ultimately, Plaintiff determined that her account had been turned over to Defendant's repossession or collection department.

17. Plaintiff made numerous attempts to contact Defendant and rectify the above situation, but Defendant's employees were rude and unhelpful.

18. In or around June of 2009 Plaintiff began receiving notices from her credit card issuers that her cards were being canceled or her credit lines decreased due to derogatory information on her credit reports.   Plaintiff

thereafter obtained her credit report and learned that Defendant had reported her as "120 days late" with a large sum past due.

19. Plaintiff thereafter disputed the false credit reporting in accordance with FCRA procedure, and then again contacted Defendant. Defendant's employee stated that Defendant would not have turned derogatory information in to credit reporting agencies if a GAP claim was pending. The employee with whom Plaintiff spoke promised to speak to a supervisor, but Plaintiff received no return call.

20. Plaintiff continued to call Defendant and learned finally that the GAP insurer had paid CitiFinancial in full. Plaintiff was assured that the account would show a zero balance on her credit report with no derogatory information.

21. Nevertheless, in July of 2009 Plaintiff received a bill from Defendant contending that Plaintiff owed $400.00 for the "interest" which had accrued while Defendant was processing her GAP claim.

22. In late July of 2009 Plaintiff received credit reports responsive to her dispute, and learned that Defendant had not only verified its prior false credit reporting, but had inexplicably updated it to show a past due balance of $1,654.00.

23. On or about July 16, 2009 Plaintiff obtained the services of an attorney, William Applegate, who wrote to the Defendant to request that Defendant correct its numerous errors, to no avail.

24. As a direct and proximate result of the negative credit reporting, Plaintiff has had multiple existing accounts closed due to "derogatory" credit information, has had to postpone buying a home, and has had to postpone her plans to take the exam for a securities license.

25. Plaintiff has additionally suffered embarrassment, fear of arrest, and extreme emotional distress as a direct and proximate result of the Defendant's actions.

## FOR A FIRST CAUSE OF ACTION

### (Violation of FCRA)

26. The above allegations are repeated and realleged herein as if set forth verbatim, to the extent not inconsistent with the allegations of this cause of action.

27. The Defendant is a furnisher of information as defined in the Fair Credit Reporting Act, as amended.

28. After being notified by the Plaintiff and the consumer reporting agencies that derogatory information was disputed by the Plaintiff, Defendant failed to conduct timely or proper investigations of the disputed information. Thereafter, Defendant negligently and willfully re-reported inaccurate information to the consumer reporting agencies, thereby violating the provisions of the Fair Credit Reporting Act regarding reinvestigation.

29. Defendant, through its actions and inactions, as described herein, caused great and irreparable injury to Plaintiff.

30. Defendant maliciously and/or with willful intent to injure, defamed Plaintiff

and invaded the legitimate expectation of privacy of the Plaintiff.

31. In addition to actual or compensatory damages, a judgment should be granted to Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages under state law, and/or for willful violation(s) of the provisions of the Fair Credit Reporting Act or other applicable federal laws.

## FOR AN SECOND CAUSE OF ACTION

### (Unfair Trade Practices)

32. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

33. The activities of the Defendant constitute "trade or commerce" as defined by South Carolina Code Section 39-5-10, et.seq., (as amended).

34. The actions of the Defendant, above-described, constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, 39-5-10 et.seq., and are willful violations thereof.

35. The actions of the Defendant have a real and substantial potential for repetition and affect the public interest.

36. The Plaintiff has suffered an ascertainable loss due to the unlawful actions of the Defendant, entitling Plaintiff to recover actual damages in an amount to be proven at trial, treble said actual damages, and an award of attorney's fees and costs.

## FOR A THIRD CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

37. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

38. Defendant intentionally inflicted severe emotional distress upon the Plaintiff.

39. The aforementioned conduct was so extreme and outrageous as to exceed all possible bounds of decency, and must be regarded as atrocious and intolerable in a civilized society.

40. The actions of the Defendant caused Plaintiff to suffer severe emotional distress beyond what a reasonable person could be expected to endure.

41. Due to the malicious and intentional acts of Defendant, all in reckless disregard of the rights of the Plaintiff, judgment should be granted to Plaintiff for actual damages, punitive damages, and the costs of this action, all in an amount to be determined by the trier of fact.

## FOR A FOURTH CAUSE OF ACTION

### (Negligence / Negligent Misrepresentation)

42. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with the allegations of this cause of action.

43. The Defendant owed Plaintiff a duty to exercise due care in handling Plaintiff's account, and a duty to see that the truthful information was

communicated to the Plaintiff and about the Plaintiff.

44. Defendant breached that duty by failing to exercise due care, and/or by intentionally misinforming the Plaintiff and third parties (including credit reporting agencies) about the Plaintiff.

45. The Plaintiff justifiably relied on the misrepresentations of Defendant.

46. As a direct and proximate result of the foregoing, the Plaintiff suffered a pecuniary loss.

47. The Defendant breached the duty to Plaintiff in the above particulars, and in such other particulars as may be shown at trial.

48. The breach of duty by Defendant was in conscious, reckless disregard of the rights of the Plaintiff.

## FOR A FIFTH CAUSE OF ACTION

### (Unconscionable Conduct; S.C. Code 37-5-108)

49. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with the allegations of this cause of action.

50. The transaction between the parties set forth above is a consumer transaction.

51. Upon information and belief, the Defendant engaged in unconscionable conduct by:

    a. threatening to initiate criminal proceedings against the Plaintiff and by implying that Plaintiff had committed "theft" or "grand theft."

  b. using fraudulent, deceptive, or misleading representations, including representations about the character, amount, or legal status of any debt,

  c. misrepresenting fees and charges as being owed which were not allowed by law;

  d. claiming that nonpayment of a debt would result in arrest or imprisonment where same was not a legally permitted remedy, and was used for purpose of harassment.

52. Judgment should be granted to Plaintiff for actual damages as well as such penalties and attorney fees as are authorized by statute, and such other relief as is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, the prayer of the Plaintiff is for judgment in an amount sufficient to compensate Plaintiff for actual damages, together with punitive damages, statutory damages, such interest as is allowable by law, costs, attorney's fees, and such other relief as is just and proper.

        TROTTER & MAXFIELD, ATTORNEYS

        By: s/ David A. Maxfield, Esq.
           Dave Maxfield, Esquire (6293)
           1701 Richland Street
           Columbia, South Carolina
           (803) 799-6000

DATED: November 10, 2009

Columbia, South Carolina